UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ISRAELITE CHURCH OF GOD IN JESUS CHRIST, INC., | : |
| Plaintiff, | : Civil Action No. 11-5960 (SRC) |
| v. | : |
|  | : **OPINION & ORDER** |
| CITY OF HACKENSACK et al., | : |
| Defendants. | : |

**CHESLER**, U.S.D.J.

This matter comes before the Court on the motion to dismiss the Second Amended Complaint for failure to state a valid claim, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants Alighieri Borrelli, City of Hackensack, City of Hackensack Department of Building, Housing and Land Use, Stephen Lo Iancono, Richard Malagiere, Joseph Mellone, and Joseph Zisa, Jr. (collectively, "Defendants"). The Court held oral argument on June 8, 2012 and ruled on some aspects of this motion, but reserved decision on others. The Court Ordered supplementary briefing in regard to the claims brought pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. The supplementary briefing has now been completed. For the reasons stated below, as to the issues on which decision was reserved, this Court will grant in part and deny in part the motion to dismiss.

In the Order entered June 11, 2012, this Court: 1) dismissed without prejudice all claims against Stephen Lo Iancono, Richard Malagiere, and Joseph Zisa, Jr.; 2) dismissed with prejudice all claims against Defendant City of Hackensack Department of Building, Housing and Land Use; 3) dismissed without prejudice the § 1983 claims against Defendant City of Hackensack; and 4)

reserved decision on all remaining issues in the motion.

**I.     Defendants' motion to dismiss**

    A.     <u>The RLUIPA claims</u>

Defendants, in their opening brief in support of the motion to dismiss, argue that Plaintiff has failed to make out a *prima facie* RLUIPA claim. The relevant section of RLUIPA states:

> General rule. No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
>     (A) is in furtherance of a compelling governmental interest; and
>     (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc. Defendants contend that an RLUIPA claim, based on this provision, should be understood to have three elements: 1) a land use regulation imposes a substantial burden; 2) on the religious exercise; and 3) of a person, religious assembly, or institution.[1] Defendants argue that the RLUIPA claims must be dismissed for failure to allege sufficient facts to support these elements.

On its face, the Second Amended Complaint appears to allege facts which support all three elements. There is no dispute that Plaintiff, the Israelite Church of God in Jesus Christ, Inc. (the "Church"), is a religious institution. The Second Amended Complaint alleges that the Church rented a building in Hackensack, New Jersey and, on May 31, 2007, applied to the City of Hackensack (the "City") for a zoning permit, seeking to use the property as a school to train

---

[1] Although Defendants cite no controlling authority to support this proposition, the division into three elements is unremarkable and follows from the plain language of the statute. This does not mean that this Court accepts Defendants' unsupported assertion of a *prima facie* case requirement.

priests. (Sec. Am. Compl. ¶¶ 4-7.) The City refused to approve the application for almost four years, formally denying a request for a variance on April 1, 2011. (Id. at ¶ 8.) The City zoning board ultimately granted the application on July 21, 2011. (Id. at ¶ 9.) As a result of the long wait for approval, the Church incurred substantial damages in rent and other costs of the vacant building, as well as professional fees for the variance application. (Id. at ¶ 12.)

These factual allegations support a claim that the City violated RLUIPA. The Supreme Court has formulated the pleading requirements to defeat a Rule 12(b)(6) motion as follows: "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). The delay in approving the application to use the property as a school, which resulted in substantial expenditures for a property which could not legally be used, raises a right to relief above a speculative level on a claim that the City implemented a land use regulation in a manner that imposed a substantial burden on the Church's use of the property to train priests – a religious exercise.

Defendants argue that there was no substantial burden on the Church, suggesting in their brief that the delay was the fault of the Church. This, of course, whether or not it is true, is legally irrelevant at this juncture. On this motion to dismiss, the well-pleaded factual assertions in the Second Amended Complaint are credited as true. It is of no present legal significance that the City contends that the true facts are different from what has been alleged. Defendants make no other substantial arguments that challenge the sufficiency of this RLUIPA claim.

At oral argument, this Court raised the question of whether a complaint that alleges that a government ultimately allowed a use could state a valid RLUIPA claim for the events which

preceded that approval, and Ordered supplementary briefing on this question. This Court concludes that Defendants have not demonstrated that such a claim is clearly invalid. In their supplementary brief, Defendants argue that the Church's claim could not ripen into a viable claim until the local land use authority heard the Church's application and voted to deny it. Since the authority heard the application and granted it, Defendants argue, the claim never ripened and is not a valid claim. This Court finds this unpersuasive.

In support of their argument that the RLUIPA claim never ripened, Defendants first point to the Supreme Court's decision in Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985), in which it held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson is not on all fours, as the instant case is not a taking case. Nor is the reasoning of Williamson clearly applicable, as the Court explained: "Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause." Id. at 190. The Just Compensation Clause plays no role in this case. Williamson is relevant to the instant decision largely because appellate courts have found it relevant in considering ripeness issues in RLUIPA cases.

To demonstrate the application of Williamson to an RLUIPA case, Defendants cite Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005). The problem for Defendants here is that Murphy is certainly applicable, but it supports the Church's position. In Murphy, a homeowner couple, who held prayer group meetings in their home, received a cease

4

and desist order from their local land use authority. The Murphys filed suit under RLUIPA. On appeal, the locality argued that the Murphy's claims were not ripe. Examining this issue, the Second Circuit did indeed discuss Williamson. Id. at 348-49. Contrary to what Defendants would like, however, the Second Circuit, after considering the finality requirement suggested by Williamson, concluded that "the finality requirement is not mechanically applied." Id. at 349. Moreover, the Second Circuit stated:

> [W]e remain mindful that Williamson County should be cautiously applied to [RLUIPA] claims. We therefore undertake a preliminary inquiry to determine whether the Murphys must show that they have obtained a final, definitive decision from the entity charged with implementing the zoning regulations.
>
> Following the guideposts outlined in *Dougherty* we ask: (1) whether the Murphys experienced an immediate injury as a result of New Milford's actions and (2) whether requiring the Murphys to pursue additional administrative remedies would further define their alleged injuries. The answers to these questions lead us to conclude that the circumstances of this case compel application of *Williamson County* to each of the Murphys' claims.

Id. at 350.

The Second Circuit thus employed a two-step inquiry to determine whether the Williamson finality requirement should be applied to the RLUIPA claim. At the first step, the Second Circuit asked whether the locality's action had inflicted an immediate injury on the plaintiffs, and concluded that it had not. Id. At the second step, the Second Circuit asked whether the existing record clearly defined the plaintiffs' injury. Id. The Court found that "the resolution of the constitutional and statutory claims we are asked to consider here hinge on factual circumstances not yet fully developed." Id. In brief, the Second Circuit found a large number of unanswered factual questions in the case, and concluded that an appeal to the zoning board would have likely produced a record more conducive to resolution of the issues at hand.

5


Id. at 351-52.

The Second Circuit did not articulate in detail how it used these two inquiries to arrive at its decision, but it appears that it found that the answers to both inquiries weighed in favor of applying the finality requirement to find the case not ripe. This Court will now apply the Second Circuit's inquiry in Murphy to the instant case. In the instant case, as to the first question, it is clear that the Second Amended Complaint alleges that the City's actions prior to granting approval inflicted immediate injuries on the Church: the Church had no certificate of occupancy and, for years, could not use a building it paid substantial money to rent. As to the second question, in the instant case, it is inapplicable: the Church has already appealed to the zoning board and obtained a final decision. The process of obtaining a final decision on the land use application has been concluded. If this case is not ripe now, it will never be ripe. There is nothing that the Church could have done, or can now do, to ripen it further.

There is thus a crucial difference between the instant case and Murphy. In Murphy, the Second Circuit considered the question of whether there might be a better time to hear the case down the road, and it concluded that there would be a much better time, once the plaintiffs had further pursued the available remedies and the factual record was fleshed out. In the instant case, there is nothing to be gained by delaying adjudication. The instant case is as ripe as it is ever going to get. This second Murphy consideration is either inapplicable or points in favor of finding the RLUIPA claims ripe.

This Court has performed the inquiry used by the Second Circuit and finds that neither prong weighs in favor of applying the Williamson finality requirement to find the RLUIPA claim unripe. As to the first prong, the Second Amended Complaint alleges facts which support finding

that the Church sustained an immediate injury, in terms of a burden on their exercise of religion. As to the second prong, the factual record is as developed as it will ever be, with regard to the City and its decision. Because no further development of the factual record appears possible – the land use authority has delivered its final decision –, and because the Church has alleged an immediate injury, the Second Circuit's inquiry in Murphy points to allowing the RLUIPA claims to proceed at this time.

In the end, Defendants' ripeness argument fails to hit the mark. The RLUIPA claim cannot ripen further, and dismissing the claim for want of ripeness – when the Church obtained a final decision from the land use authority before initiating suit – is unjust. This does not constitute a decision on the question of whether the Church has a valid RLUIPA claim for the intermediate actions of City officials prior to the making of the final, favorable decision. That question has been left unanswered. On a motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). Defendants have not persuaded this Court that the RLUIPA claim is invalid.

This conclusion finds support in the one Third Circuit case to consider Williamson and Murphy in the context of RLUIPA, which is non-precedential. In Congregation Anshei Roosevelt v. Planning & Zoning Bd., 338 Fed. Appx. 214 (3d Cir. 2009), the Third Circuit considered whether an RLUIPA claim was ripe for review "in light of the four considerations outlined by the Second Circuit Court in *Murphy*." Id. at 217. The Third Circuit affirmed the dismissal of the case, concluding that the claim was not ripe until the synagogue had applied for a variance and the zoning board had issued a definitive decision on the application. Id. at 218. In discussing the case, the Third Circuit stated:

> Permitting the Board to reach a final determination on a variance application may resolve the constitutional issues the Congregation alleges. For starters, it is not apparent that the Congregation has suffered any constitutional injury simply because it must apply for a variance; indeed, it appears the Yeshiva is still operating at the synagogue. Put simply, we do not know the extent, if any, of the Congregation's alleged RLUIPA injury without a final determination as to whether the Yeshiva will be permitted on the property. We do not even have a complete record from which we can address and determine the issue of whether there has been any burden on the Congregation and the Yeshiva, and whether that burden is a result of a compelling government interest and is implemented in the least restrictive means.

Id. at 219. In considering the Third Circuit's non-precedential decision in that case, this Court makes two observations. First, although the Third Circuit did not expressly state that it was using the Second Circuit's two-prong inquiry from Murphy, it appears to have, like the Second Circuit, based its decision on the questions of: 1) whether an immediate injury had been sustained; and 2) whether further development of the factual record would result in improvements in the administration of justice. The Third Circuit found that the answers to these two inquiries weighed in favor of finding the RLUIPA claim unripe.

Second, the Anshei decision suggests, at a minimum, an openness to the Church's position in this case. Implicit in the Third Circuit's discussion in Anshei is the idea that the synagogue might have sustained a constitutional injury in the absence of a final determination. It appears as well that the Third Circuit could conceive that such an injury might be actionable. Anshei leaves open the possibility that a plaintiff who could demonstrate a burden prior to receiving a final determination from the land use authority could bring an action under RLUIPA. The Third Circuit appears to have found that, in that particular case, two factors weighed in favor of finding the claim not ripe: 1) the synagogue could not demonstrate a burden prior to receiving a final determination from the land use authority; and 2) the record was incomplete and a final

determination was needed to enable the court to decide the case. Based on these two factors, as in Murphy, the case was dismissed for lack of ripeness. In the instant case, these two inquiries point toward finding the RLUIPA claim to be ripe for adjudication.

Moreover, this Court observes that one problem with the City's position is that it has troubling implications as public policy. If it were the law, municipalities would have license to impose illegal burdens by delaying the land use approval process endlessly. There can be no question that Congress did not intend RLUIPA to provide such a gaping loophole. The idea that municipalities can escape the strictures of RLUIPA just by running applicants in infinite circles appears quite inconsistent with Congress's intent. The statute itself states: "This Act shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution." 42 U.S.C. § 2000cc-3(g). Furthermore, the definitions section of RLUIPA states:

> The term "land use regulation" means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

42 U.S.C. § 2000cc-5(5). This definition is broadly worded, and appears to include within its scope any application of a zoning law that limits a claimant's use of land. As alleged in the Complaint, the actions of the City over the four years prior to the grant of approval appear to fall within the scope of this definition.

Defendants also move to dismiss the RLUIPA monetary damages claims against named City officials in their personal and official capacities. As to suits against City officials in their official capacities, RLUIPA expressly includes within the definition of "government" "any other

person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A)(iii).  This includes municipal officials acting in their official capacities.  Nor does Eleventh Amendment immunity extend to municipalities or municipal officials.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).  As for RLUIPA claims against officials in their personal capacities, Defendants point to cases involving prisoners, under a different RLUIPA section, and involving an entirely different constitutional analysis under the Spending Clause; the RLUIPA provision at issue was enacted pursuant to the Commerce Clause, and the rationale in these Spending Clause cases does not apply.[2]  In the absence of any controlling or other appellate authority on this question, this Court finds the relevant RLUIPA provision similar to § 1983, which has been held to allow actions against officials in their personal capacities.  Powell v. Ridge, 189 F.3d 387, 401 (3d Cir. 1999).  As to the RLUIPA monetary damages claims against named City officials in their personal and official capacities, the motion to dismiss will be denied.

Similarly, as to the free exercise claims against Borelli and Mellone, under federal and state law, Counts Four and Five, the motion to dismiss will be denied.  As to these individual Defendants, the free exercise claims raise very similar issues to the RLUIPA claims, and the Second Amended Complaint states valid claims on these issues involving the burdening of religious exercise.  As to Count Four against the City, the motion to dismiss has already been granted, as the Second Amended Complaint fails to alleged sufficient facts to support a Monell claim for municipal liability, which is the only possible basis for municipal liability on a § 1983 claim.  As to Count Five against the City, as will be discussed further below, the motion to

---

[2] The Third Circuit's recent RLUIPA decision is one such case.  Sharp v. Johnson, 669 F.3d 144, 153 (3d Cir. 2012).  Because a different section of RLUIPA is at issue here, the rationale in that case cannot be applied to this one.

dismiss will be granted for failure to meet the pleading requirements of Iqbal and Twombly.

      B.      The remaining claims

As noted, after hearing oral argument on June 8, 2012, this Court entered an Order dismissing certain claims. Aside from the RLUIPA claims, only the claims against individual Defendants Borelli and Mellone, as well as the state law claims against the City, survived that Order. Of these claims, this Court has *supra* denied the motion to dismiss as to the RLUIPA claims, and as to Counts Four and Five against Borelli and Mellone. As to the rest of the claims which survived the decision of June 11, 2012, the Second Amended Complaint, while pleading facts which might support these claims, makes no effort to connect specific facts to specific claims against specific parties. The sections of the Second Amended Complaint which set forth the claims are drafted in very general terms. They do not refer to specific facts or specific people or entities, but target, as a group, "Defendants." This style of pleading has not survived the Supreme Court's decisions in Iqbal and Twombly: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted). The claims at issue in the Second Amended Complaint provide little more than a formulaic recitation of the elements of a cause of action. They will be dismissed without prejudice so that Plaintiff may redraft them in accordance with the pleading requirements of Iqbal and Twombly.

Lastly, Defendants move to dismiss the Second Amended Complaint on the grounds that the claims are barred by the applicable statutes of limitations and by New Jersey's entire

controversy doctrine.  The Supreme Court has stated the applicable standard as follows:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

Jones v. Bock, 549 U.S. 199, 215 (2007).  In opposition to this argument, the Church notes that the allegations in the Second Amended Complaint support timely claims under the continuing violations doctrine.  See O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006).  As to the entire controversy doctrine, this argument relies on facts outside of the Second Amended Complaint and cannot succeed on a Rule 12(b)(6) motion.  The allegations in the Second Amended Complaint do not suffice to establish that the claims are barred on either ground.

In conclusion, for the reasons stated above, the claims in the Second Amended Complaint which survive this decision are: 1) all RLUIPA claims against the City, Borelli, and Mellone; and 2) Counts Four and Five against Borelli and Mellone.  As to the remaining claims in the Second Amended Complaint on which this Court had reserved decision in its Order of June 11, 2012, the motion to dismiss is granted, and these claims are dismissed without prejudice.  Plaintiff will be granted leave to replead the claims dismissed without prejudice, but must ensure that each individual claim contains within it not only the legal basis for the claim but also all specific factual allegations, identifying specific Defendants, which raise the right to relief above a speculative level.

For these reasons,

**IT IS** on this 9th day of August, 2012,

**ORDERED** that Defendants' motion to dismiss the Second Amended Complaint for failure to state a valid claim (Docket Entry No. 46) is **DENIED** in part, and only the claims pursuant to RLUIPA, and Counts Four and Five against Defendants Borelli and Mellone, survive this decision; and it is further

**ORDERED** that Defendants' motion to dismiss the Second Amended Complaint for failure to state a valid claim (Docket Entry No. 46) is **GRANTED** in part; and it is further

**ORDERED** that all remaining claims on which decision was reserved in this Court's Order of June 11, 2012, and which have not been specifically identified as surviving this decision above are hereby **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff is granted leave to amend the Second Amended Complaint, in accordance with the legal requirements explained above, within 45 days of the date of entry of this Order.

                                                            s/ Stanley R. Chesler
                                                   Stanley R. Chesler, U.S.D.J.